Your Honor, the first case of the morning called 209-940, Board of Education of Durant Community Unit School District No. 322 v. Board of Education of City of Chicago. On behalf of the Adelante, Ms. Leanne Lauder. On behalf of the Adelaide, Ms. Laura M. Sinales. May it proceed. Good morning, your honors. May it please the court, Ms. Lauder on behalf of the Chicago Board of Education. I'm going to address two issues here, both relating to section 14-7.01 of the school code. I'm arguing that the trial court erred in awarding summary judgment to District 322 because there were several issues of material fact that remained in dispute. The first part of my argument, I'm going to address why the finding that the kids went to Dolan due to their disabilities or because of their disabilities was a material issue of fact that remained in dispute. In the second part of my argument, I'm going to address why the damages issue, there were many material facts that remained in dispute over the issue of damages. So turning first to the issue of why the children were placed at Dolan, none of the four Chicago public school students was placed at Dolan because of her disability. Amanda was placed there because her father's anger management instructor recommended that she go to Maryville because of behavior problems. But just four months before that happened, both of Amanda's parents had been at an individualized educational placement program, sorry, IDP meeting in Chicago. And at that meeting, both of them had agreed that she didn't need a residential placement or a therapeutic day placement. These charges was from, I think it was like Dolan? Dolan is the District 322. There's no dispute that Dolan treats mental disability patients, is that correct? Dolan is a public school on the grounds of Maryville's, which is a private residential treatment facility. So District 322 has two basic placements. They have their regular high school and elementary school, and then they have Dolan. And at Dolan, all the children from Maryville attend there, and then a number of children who need special education services from around District 322's area go there also. And the four children at issue in this case, and their related school expenses, did attend the disability part of Dolan. Is that in dispute? No, Your Honor, it's not in dispute that they attended Dolan. What is in dispute is why they attended Dolan. And the Chicago Board would be required to pay their tuition there if they attended Dolan because of their disabilities, but they didn't. Amanda attended because her father placed her at Maryville for behavior reasons. Selena and Valerie attended Dolan. I want you to keep on that line of thought. Could you bear in mind, as you're explaining to us now, the reasons why the children went to that particular school, in light of the trial court statement that the Board of Education of Chicago did not present any evidence or material in opposition to the affidavits of Miller and Damon, which I presume is not, well, it's in the wrong quote I'm reading here from the trial court of his statement. So he says you didn't give any evidence as to why. You're saying, you're telling us why they went there. And I'm saying the trial court says you didn't put any evidence to support what you're saying now. Right. That was in the damages part that he was saying that. He took two affidavits from District 322's business manager and the special ed co-op's business manager to decide the damage issue. So if you want me to get to that. No, no, but he said, he said. As far as we didn't present any evidence, he's wrong. We presented the deposition of William Damon, who is District 322's business manager. Are you talking now about the damages issue? Yes. Well, what about his statement that you didn't put any, any. That's not the damages issue. Maybe I thought that I was in a place where he's. In the preceding paragraph, he's talking about the reason they were educated by Duran. But if I misspoke there, I'm sorry. I do remember those affidavits raised, but I thought that the issue of why they went there was tied in also. So you did put on evidence that the children, of why they went there, you're saying? Yes. What was the trial court's reaction to that? We put in evidence. Excuse me. Go ahead. We put in evidence of what their IEPs were in Chicago. Three of these girls just had learning disabilities. Kids don't get placed in a residential treatment facility because they have a learning disability. Well, counsel, who was in the best position to make that determination? I mean, District 332 would have had to make that determination and place them in Dalton, did they not? No, they didn't make that determination at all. Maryville enrolled the students in Dalton. Right, Maryville put them in Dalton. Right. Okay. And did they have the best, no, I don't believe that they did. All these kids had been attending Chicago public schools for years. So I believe it would have been the Chicago district who had the best view of what they needed. And the Chicago public schools had said none of these children needed a residential placement. The only reason they were placed in a residential treatment, and I dispute that it was even residential treatment, was because their parents placed them at Maryville. Now, when Selena and Valerie were in, they were placed in Bartlett, Maryville's Bartlett facility, and when that facility closed, they moved to Maryville-Durant. So the only reason they're in Dolan is because they'd been transferred to Maryville-Durant. Both those kids had learning disabilities. When they were in Chicago and when they were in Bartlett, they attended regular schools. So you're saying the learning disabilities of these particular students didn't rise to the level of mandating a placement in Dolan? Does that seem to be what you're saying? Absolutely not. Children aren't placed in residential treatment typically because they have a learning disability. So then you're saying a learning disability does not fall within the purview of the statute. It's not a disability, according to you, then? No, of course it's a disability. A learning disability is a disability. It's just that what kind of services are needed for someone who has a learning disability, not a residential treatment facility. You seem to be vesseling back and forth. Let me see if I can pin down your position. You do not dispute that Section 14-701 requires a resident district to provide reimbursement for out-of-district placement, correct? You're not disputing that? I'm not disputing if the children are placed there because of their disabilities. Your position is that the provision applies only if the placement was made because of the student's disability, correct? That's what the statute says, yes. And so you're saying there's no evidence that the children were suffering from disabilities that are covered by the statute? No, I'm saying that they weren't placed at Dolan because of their disabilities. They weren't placed at Dolan because they had learning disabilities. They were placed at Dolan, Amanda, because her father couldn't control her behavior. Wait a second. Who placed her at Dolan, Maryville or the parents directly? Maryville. Okay, so it's not true what you're saying. The parents didn't place anybody at Dolan. Maryville made the determination. I believe I said that the parents placed the children at Maryville. Right. So who placed them at Dolan? Maryville placed the students at Dolan. Not because of their disabilities, but because their parents couldn't control their behavior. There was no disability related to their behavior management. One child, Amanda, had an emotional disturbance. That was her disability. But in Chicago, she was in a separate classroom. She wasn't in a residential treatment facility. Isn't it a two-step process? If you buy your argument, the children were placed in Maryville because of not a disability, but because they couldn't be managed. Right. But once they were placed in Maryville, which is a private school, then Maryville was the one that decided to place them at Dolan. It's not really that Maryville's a private school, Your Honor. Maryville is a residential treatment center. And on the grounds of that, there's a public school, which is Dolan. So Maryville's not really a school. Dolan's the school that the kids go to. The third child, Alexandra, was placed at Dolan because her father couldn't control her social... Dolan tried repeatedly to get a hold of her father, but he basically abandoned her there. They sent seven letters to her father, and none of them reached him. They were all returned undeliverable. So it's clear from the record that this is in dispute, whether the children were placed there because of their disabilities. And I argue that they're not, that they were not. Are all children that are placed in Maryville also placed in Dolan? Yes. Every child that's placed at Maryville also goes to Dolan. It's interesting, though, that Selena had one class in Duran's high school. She was educated for one class in Duran, so she stayed at Maryville most of the... I'm sorry, she stayed at Dolan most of the time, but she had one class at high school. Now, when... Are you, your client, Chicago Board, getting stuck with the cost, then, of the stay at Maryville, or just with the cost of the Dolan school? Well, I'd argue we were stuck with both of the costs because we were required to pay for residential treatment. This is a quarter million dollars that we're required to pay here. And yet, Mr. Damon, the business manager of District 322, said that they weren't charging us for room and board because Maryville was paying room and board. Well, if they weren't charging us for room and board, I'm not sure why we were paying $37,000 a year because the kids who were bused in and out were only paying $20,000 a year. All right, well, okay, so that gets into those affidavits that I referenced before. Right. So your view is, then, that because the children were in Maryville for alcohol and behavior problems as opposed to disability problems, you are accepting responsibility for paying for what, then? Well, we wouldn't accept responsibility for paying for any of it because they weren't properly placed there. They weren't properly placed there? No, they weren't. They were not properly at Dolan. No, no, no, I'm talking about at Maryville. I mean, you don't, you don't, they're in Maryville. Right. Do you object to them? Do you have some basis of which to object they can't go live in Maryville? Well, the reason, they can live in Maryville if they want, but I don't think the Chicago Board would be responsible for paying for their education there because the parents unilaterally placed them at Maryville, and they didn't need Maryville for educational reasons. District 322's lawyer admitted that. She said they weren't placed there for educational reasons. No, but once they're placed there for behavior reasons, they have to go to school. Right, and what should happen in that situation is under Section 10-20.12a and b of the school code, if you have a nonresident who enrolls in your schools, what the district is required to do is notify the person who placed them there how much the tuition is. So who placed these kids there? Maryville. So they should have been notified, here's the tuition, $37,000. At that point, Maryville could have asked for a hearing, but in that hearing, Maryville would have had the burden of going forward, not the board, and Maryville couldn't have proven that those kids were residents of Durant because they're not. Their parents lived in Chicago. So once that hearing was resolved, if they said, no, these kids aren't residents, then the school code says they can't continue to go to school there unless the parents or the person who enrolled them there pays their tuition. What's the linkage between the resident of the child and the resident of the parent? Doesn't law state that the resident of the parent is the resident of the child and it's undisputed that the parents lived in Cook County? Right. We don't dispute that Chicago is the resident district. We're not in dispute of that. What we do dispute is the reason that the kids were placed at Dolan and the children were not placed at Dolan because of their disabilities. What your position, though, is you don't dispute the parents are residents of Chicago, which is why the resident school district would turn to the parents for the money because if the kids were residents of whatever that school district is, there wouldn't be any questions. So your position is the parents moved the kids to Maryville. The parents are responsible because they're out-of-district kids. That's what the school code says, yes. So the significance of the issue of whether the children are residents where their parents are residents for your argument is that the parents are stuck with this bill, not the Chicago Board of Education. I'm not disagreeing with you. No, I understand because Chicago was providing a free, appropriate public education to the students and the parents had all agreed with that. They'd all agreed with that only months before they moved their kids to Maryville. So we were providing a free, appropriate public education as was our obligation. My point is that much has been said here about the fact that the kids are residents where their parents are. You're fine with that. But the consequence of that, in your argument, is that that's precisely why the parents who choose to put the kids there are. . . Now, what if there's some sort of a corridor that's got nothing to do with educational disability but behavior problems that house us in there? That's different. That's under Section 7.05. If it's a corridor placement or if a child is in a state facility, like a DMH facility, then it says that that's a different issue, but there's no corridor here. Now, who pays on the streets? In that situation, the comptroller pays under Section 7.05. The state-in-order comptroller? Yes. Counsel, is your position that these students do not have a disability within the meaning of the statute? Is that really what you're saying? No, Your Honor. They do have disabilities, but they weren't placed at Dolan because of those disabilities. They could have been educated in a regular classroom. They didn't need residential treatment. You don't need residential treatment if you have a learning disability. You just need some modifications of the instructions. So what triggers, in your mind, in the application of the statute? How would anybody ever fall within the purview of the statute? If they needed a residential treatment to get an education. Some kids are so emotionally disturbed that they have to go to residential treatment facilities to get their education. Some of them run away, for example, or they're just too mentally ill to be educated in a regular classroom. So some children do need residential treatment, and the Chicago Public Schools pays for some children to receive residential treatment. But these children did not need residential treatment, and their parents had agreed that they didn't, only months before they placed them in Maryville. All these children were being educated in the Chicago Public Schools, not in a residential treatment facility. So does Maryville take everybody at the request of their parents? Apparently so. There was a change happening in Maryville at this time. The state of Illinois Department of Children and Family Services had decided not to place any more children with Maryville. So all of the children who were placed there were private placements, or they were placed by iCare or the Illinois State Board of Education. So there's no screening process. Maryville takes everybody. Anybody can just dump their children into Maryville, according to you. Well, Your Honor, I represented abused kids for 13 years, and that was the case. Yes, Maryville took all comers. That was one of the reasons they got into trouble, I believe, and that's why DCFS quit placing children there. Well, we'll have arguments from your Lord and Counsel on that issue, but I appreciate it. Okay. When Judge Prochaska granted us a stay, he found that this was a case of first impression. Let me interrupt. Yes, Your Honor. Is the timer working automatically? The bell rang. Oh, is that what that was? I wasn't sure what that was. I'm sorry. I'm used to a light. Thank you. I'm sorry. I'm trying to get a louder bell because sometimes people have trouble hearing the bell. No, I thought that was someone's phone. I'm sorry. Oh, there would be bigger problems. All right. Yeah, those are one of ours. I'll reserve the rest of my time. I'm sorry. I didn't know what that was. Good morning. May it please the Court. I'm Laura Stenaris, appearing on behalf of Duran School District Number 322. In light of the arguments that you just heard, I want to focus my comments on two particular issues. And I'm going to ask you to engage in two multi-step processes as we're going through our discussions this morning regarding the District 322's entitlement to the tuition that it seeks in this case. The undisputed facts are that there are four special education students, four students with a disability who have been properly identified as students with a disability, who attended the Dolan Center at the expense of Duran School District 322 to the tune of approximately $250,000. Not to interject. That's where you're off the stride, but that seems to be the threshold issue. As I understand the Chicago Board's position, they're saying that the statute requiring reimbursement is triggered only if a placement is made because of the student's disability. That's correct, sir. And she's disputing very vigorously that these students do not have disabilities that would trigger the application of the reimbursement statute. So how do you respond to that threshold argument, there's no disabilities, there shouldn't be reimbursement? First of all, is that a correct statement of the law? And if it isn't, where is the evidence of disabilities? I believe that the law indicates that if the students are placed at Dolan due to their disability, Chicago Public School undeniably has to pay the tuition for these students. I think Article 14, both Section 1.11, 1.11b, and 7.01 are very clear and undisputed. So the disability issue is part and parcel of the analysis. It has to be there because of a disability within the meaning of the statute. Yes, and the residence district, meaning the district where the parents reside, has to be Chicago Public Schools for me to prevail. So she's saying they're just generally acting out, they have some behavior issues, and all of a sudden the parents decide to take it upon themselves to place them in Maryville because that sounds nice, and all of a sudden Chicago's stuck with the tab. What evidence is there of disabilities within the meaning of the statute? There's much evidence, sir, with regard to the disability. I just want to, before you, I want to hear that question, but it seems to me, would you keep in mind, the City Board of Education calls not just students, kids have disabilities. So everybody agrees you have disabilities. Correct. So some disabilities require residential treatment out of Maryville, and some disabilities don't. So her point is, I mean, when you're answering now what the evidence of your disabilities is, I want to hear whether you agree with what I just said, that there's some disabilities that do not justify going to Maryville, and that's what she says we have here, and that their behavior problems that cause them to go to Maryville are distinct from the disability problems. So keep that in mind. Sure. I would ask the Court to go back to Justice Bowman's comment earlier, that we have students who went to Maryville, which is not the subject, it's not my client. I'm not trying to recover the cost of their residential program at Maryville. What I am attempting to recover is the tuition for the day school program at the Dolan Educational Center, where the students were placed properly pursuant to their individualized educational programs, where an IEP team was convened, duly convened under the law. This is not disputed at all in the case. A group of individuals knowledgeable about the students, knowledgeable about both federal and state law that governs how students with disabilities are placed. I don't think she's going to disagree with you here either. She might be quibbling, and I shouldn't use the word quibble, maybe arguing about the amount that's at stake here because she thinks it's kind of high to cover part of the Maryville cost, but leave that to the damages issue. So her view is that given that they are only going to school at Durand, and the question is not living at Durand, is it Dolan or Durand? They're not living at Dolan. They are living at Maryville. Okay, so Dolan's the school. Correct. So the question becomes, who is responsible for paying the tuition at Dolan? And her view is that because the parents chose to send the kid out there, and the kid is a resident of Chicago, she agrees that you're not responsible for it. You should be chasing the parents. Well, the argument is flawed because the students, and there's a line of cases that are cited in the district's brief going back to 1977 where this very scenario has been applied in the way that the district 322 is asking you to apply here today. The students came to live separate and apart from their families. The reason for that is irrelevant to the inquiry that's before this court. So they are living separate and apart from their parents, so this sort of bedrock principle that a child is a resident where his or her parents are is not so bedrock then. Yes, it is. It's bedrock in the sense that it is common law. It's been long-standing common law, and it's identified in the two cases that I cited in the brief, the 153 v. 154 case and the William C. v. City of Chicago defendant, the same arguments you'll see were made in that case from 1979, and that is codified in Article 14 in Section 1.11 and Section 1.11b. Those two sections say that the resident district of a student with a disability is the district where the parent or legal guardian resides, as long as that parent is residing within Illinois. And the very reason that statute was designed, was implemented and written by the General Assembly is to address situations just like this. If we follow CPS's argument, then any school district that happens to have a residential facility, treatment facility, group home, whatever, within its jurisdictional boundaries, would be responsible for the educational costs of all of those students. That can't be. You can't have a small farming community like Duran responsible for the extraordinarily expensive costs of students with disabilities who have such high needs as the students who attended the Dolan Educational Center. But this has all got to, it's got to turn in on who has the authority to trigger this financial responsibility. I mean, every parent in Chicago Public Schools can't just send their kids out of the district to some nicer place at their whim. No, and they don't. Okay, so what, so they can't, they can't do that, right? Well, if they're accepted by that facility, yes they can. Okay, so I don't understand that. So if Dolan accepts, if Maryville and slash Dolan accept the kids, then the Chicago Public School System is on the hook. Correct. And Chicago Public School System was invited to participate in the IEP process where their student's educational program was written, where they were ultimately placed in the Dolan Educational Center, where the group of individuals came together and said what kind of services do these students require. Were they invited to come in to see whether the kids should go to Maryville at all? No, that decision was not made by any of the school districts. So they were invited to come in, they were afraid of being, they were going to send them a bill. Correct. So they were invited to come in to talk about the IEP, which is just their educational, what classes they were in. But it's the IEP that governs 7.01 that says that they were placed at Dolan due to their disability. What's to stop, what's to stop then thousands or hundreds of thousands of kids from finding places like Maryville that will accept them, going to a place like Dolan, and sticking to build a city to Chicago Public School? Because there has to be a funding source for the residential component, which far exceeds the tuition component of these programs. And there are multiple funding sources out there. DHS, the Illinois State Board of Education, private funding, insurance funding. There's a whole, but they have to be funded in order to live at the residential program. I don't know if you're answering this question. The question, as I sort of understand it, is what is the threshold screening process to prohibit, as you said, hundreds of thousands of parents saying, hey, this is a great idea, life in the country, we're going to place all our children in Maryville, and Chicago's going to be on the hook. Is there some screening process, or does the mere fact they decided to bring them to Maryville trigger Chicago's responsibility? I don't believe it's the mere fact that they decided to bring them there. Maryville has to accept these students. Maryville typically accepts, I mean, and there is a funding source attached with the residential programming. Nobody is asking CPS to pay residential programming. Let's just say the parents have money. Boom, they're going to pay the residential cost. Correct. Okay, so now the city of Chicago's Board of Education gets caught with the school, which is higher than their own. Is that going to happen? That's correct. That is correct. And that happens throughout the state of Illinois on a daily basis. And so the city of Chicago's Board of Education says it would cost us $10,000 a year to educate these children with disabilities. Dolan charges $30,000 a year. They get stuck with the bill as long as the kids are out there without any sort of official designation, like they can say a state placement or anything like that. Well, they do have the ability to participate in the decision as to whether they would go to Dolan or the local high school or some other educational program. CPS chose not to do that in this case. Whatever choice they make, they're getting the bill. They will get the bill. Okay, I don't care if they get to choose which school the kid goes to. I'm talking about they're getting the bill that they're going to pay for kids to go to school someplace outside of their district. Yes, that's correct. And that's because the kids, without anything other than their parents' wishes, can move their children someplace out of the district, and then that's it. They're on the hook for the bill. They may be able to participate and say, look, don't put them in this school, put them in that school. Yes. I don't – that seems – it could be a whole different thing. You may think that that may lead to difficulties and problems for school districts throughout the state, but I'm telling you that's undeniably what Article 14 tells us, between 1.11a and 1.11b and the line of cases that I cited in the district's brief. That is exactly what the law says. It allocates the expenses for these students, and it says that it's going to be the resident district, the district where the parent resides, that's going to be financially responsible. And if CPS wants to quibble over whether they were in too expensive a program or not too expensive a program, then they ought to show up and participate in the process. They were invited to IEP meetings for each of the students in question. They don't dispute that. They don't deny that. They chose not to partake in participating in the process in the development of that very program. The program, going back to the original question from Justice Hudson, that placed the students, because of their disability, in Dolan. And because of that, when you read those statutory sections together, it is undisputably clear that it is CPS that's responsible for the tuition costs. So you're saying that everybody who goes to Maryhill ends up being educated at Dolan? No, that's not true. That isn't true? No. There's some screening process to determine who ends up in Dolan? Yes, there's an IEP process. The school code, the IDEA, the Individuals with Disabilities Education Act, is a federal statute. There's a corresponding state statute all found in Article 14. The section is 8.02 that talks about a multidisciplinary process for evaluation and placement of students. You gather psychologists, social workers, teachers, educational professionals, parents, school district representatives. Before the decision is made? Correct. So now we're making some progress to the core issue that seems to be the concern. Thank you for looking at that, but we're not. This is past the stage where I have a concern. I appreciate you looking at it. This is the part where they go to Dolan, they go someplace else, and what they do at Dolan, and some things they'll do at Dolan will cost more? That's not my point of concern. I'm concerned about the earlier question is, once they're at Maryhill, the City of Chicago's board is on the hook for whatever this turns out to be, maybe more, maybe less. That's true. That is true. That is true. There are not hundreds of thousands of students that do this, sir. I can assure you of that. I find it difficult to believe that the statute is written in a way that would allow that to happen. It does, and it is. I'm very clear on that when I look at the statute. Is there a case file that holds this? Yes. If you look, there's three cases that are directly on point, same factual scenario, students living separate from their parents. Two of the students are in two of the cases, the 1979 and 1977 case, the 153 versus 154.5, and then there's another case, William C. versus Chicago Board of Education. In any of those cases, was there any discussion about whether or not the residential school district had the ability to educate the kids? Yes, yes. Okay, now that's a criteria that I thought would be there. In other words, the Board of Education is going to get stuck with the bill because the kids go someplace else because the Resident Board of Education is not providing the service. No, I'm sorry, sir, no. Not in that sense. Not in that sense. So in those cases, we're not going to hear anything about that? We're not going to hear any discussion about whether or not there was a failure for whatever reason on the Resident Board to provide the services this particular kid needed? No. Both of the students were placed in Lundmark, I believe was the name of the facility, and it was described as a unique rehabilitative facility where the students could benefit from a variety of services that were available in that residential program. And then once they were in that residential setting, in both cases, they no longer resided in the same jurisdiction as their parents for school purposes. What's all this unique talking? Do you mean it's not unique because it wasn't available when they lived? You mean the residential treatment component of the program? Perhaps. I don't know. Well, wasn't that crucial for the decision? No. Not how they got to that residential treatment facility was not relevant to the decision at all. At that point in time, it became relevant, where are these students going to be educated? And at that point in time, both of the students ultimately, in both cases, it was the court's determination that they would be educated where the residential treatment facility was located. Here, in this case, if we analogize to our case, it would be Maryville. And they were, so it would be the Dolan or Duran public schools, again, in our case. And then the court reviewed the requirements and the fundamental principle that ultimately students reside in the jurisdiction of their parents. In the cases you're talking about now, the kids went to this unique program for these residential facilities, and that was something that their parents evaluated on their own without any input from the state agency? Correct. And they decided, we're going to send our kid here because they have these unique residential things, and those were not directly tied to the kid's disability? No. Well, presumably, yes. But that wasn't relevant to the inquiry before the court. The only inquiry before the court is, what kind of educational program do these students need? Where should they be enrolled in school, and then who's paying the bill? And in that circumstance, they said the students need the specialized program. They happened to be through a special education program. So you're saying how they got there was not part of the analysis? No, it's not part of the analysis. Have you ever researched the legislative history of the section to determine what the intent of the legislature was? I've reviewed 1.11, 1.11a, and 1.11b, and that was specifically addressed to afford, allocate financial responsibilities, purely and simply. And that was designed to address issues relating to this very scenario, where we have students who are living apart from their parents and allocating the cost of how we're going to educate those students. And ultimately, it was chosen to put it back at the resident district with the parent. All right. Let me ask one other point. Apparently, the Avalon didn't get involved in the cost. You wanted to allow additional argument on the cost aspect. Rather than you come back, would you like to make some comments on the cost aspect, and then we'll hear from the Avalon on the cost aspect? But before you do that, just to sum up here, even with your assurances that there aren't hundreds of thousands of kids leaving Chicago or someplace else to do this, the law would permit that. The law would permit that. And so we'd have to write a case that says the law would allow the hundreds of thousands of students to leave at their parents' discretion, unbridled discretion. And once they went someplace, Chicago or whatever place they left, they would be invited to participate in the IEP, whatever. But that's only going to affect whether the cost is $20,000 versus $10,000 or $15,000, whatever the IEPA, whatever you call it, terms. But the decision that the resident district is responsible for the schooling is going to turn in a way that without any safeguards or limitations on people just leaving wholesale and doing it. Well, I believe the law is clear that, yes, it is the resident district that is responsible for the financial costs, regardless of why the students are living separate from their families. Regardless of why. Okay. I mean, that's a clear position. And there is another case, one other case that I just want to bring your attention to. It's by this court, the 2nd District Appellate Court, and the case involving District 428 versus District 214, a 1999 case where they interpreted the statute exactly as I am asking you to do today. And is this limited to kids with disabilities, though? Yes, it is. It's all limited to students with disabilities who have been trafficked. So if a parent has a child with a disability, they can live with Uncle Hank across the state, and the new school district would just send the bill to the old school district? They have the right to do that, yes. Okay. Now, you'd better talk about damages because we kind of didn't get to them with answering all these questions. Do you have any problem initiating the discussion of damages, or would you rather make a reply type of argument? I'm happy to proceed as the court directs. So if you would like me to address that now, or if you'd like me to wait, would you like me to proceed? Yes. Briefly, because I do understand I'm well beyond my time allotment this morning. The claim with regard to damages, I believe, ultimately needs to be rejected for two very basic reasons. One is that, to the extent that the argument is that the affidavits were not presented as part of the motions for summary judgment, I believe it's inconsistent with the process that the parties followed before the trial court judge. The judge continued the proceedings to allow for additional affidavits to be submitted on the issue of damages. And then secondly, I would submit to you that the actual affidavits that were indeed submitted by Bill Lehman and by Susan Miller, both of whom calculate the tuition cost of special education programs as a part of their business and are trained in that, satisfy the rule, the Supreme Court Rule 191 requirements. They were based on personal knowledge. They are factual. They attach supporting documentation to support their claims. And the individuals have called upon could testify to them, as was evidenced by the actual deposition taken by Bill Lehman. I don't believe there is any contradictory evidence that was submitted by Chicago Public Schools, consistent with the quote that was read earlier by Justice O'Malley, that would suggest that there is a material issue of fact relating to the actual damages. Wasn't there some evidence in the record that indicated that apparently other districts providing the same type of benefit had much lesser costs? I'm sorry, Judge, I don't recall that being in the record. I do, and that would not be my experience in my practice, but I can't recall that being in the record. Well, what about this issue? In his deposition, Damon stated it was his understanding that the reason for the disparity was the Maryville residents require a higher intensity level of services. They have greater needs. However, the forms, 5066A for residential students and those for day school students, contain the same line items but do not reflect the residential students received a higher intensity level of services. So wasn't there a little bit of a gap there that's being unaddressed that creates arguably an issue of fact? He's got his understanding, but that is an effectual assertion, isn't it? Well, the understanding is based upon the services that the students receive pursuant to their IEPs, and CPS themselves admit that the students received one-to-one assistance. That's another person hired to work with that particular child and is allocated as a part of the overall costs that are included in the cost sheet. So there are more intensive services. There are more counseling services that are provided to students, and these four students in particular who require more intensive services as a part of their educational programming. So what's the problem with having a hearing on that issue? Well, in part because of the cost and delay in doing that. This is students going back to 2005 where Durant School District has been out a quarter of a million dollars for educating students that ultimately it should have been able to recover the cost immediately from Chicago Public Schools like it has from all the other schools throughout the state. Would a delay trump the right to a full and a fair hearing on an issue? No, but I don't believe it's necessary. I don't believe that Chicago Public School presented anything that is contradictory to the evidence that was submitted by the affidavits. They submitted no counter affidavits. They submitted no evidence to suggest that the information that was provided by Bill Damon is incorrect or inaccurate in some way or is not indeed in compliance with the formula that's in the school code and in compliance with his training in both how to fill out the forms developed by the Illinois State Board of Education and the training manual that he utilizes to do that. There's no suggestion that anything that he did was inaccurate or incorrect or not based upon valid, reliable data and information. So I submit to you there is no issue of fact on that. And Dolan didn't have any choice but to accept these students, right? That's correct. Section 226.50 of the Illinois state regulations indicate that if they are living within your boundaries, you have to enroll them and provide services and that jurisdictional disputes between public school districts cannot be a bar to services for students. They had no choice but to educate these students. I aim to keep saying the same thing over. I'm anxious to get further with this because it just seems to me that all the issues we hear about, the disparity in educational offerings across the state because of localized funding versus state funding, can all just evaporate as far as kids with disabilities. I mean, every person living in what most people consider to be a substandard school district with not very good special education programs could ship their kids to a very wealthy area and those schools would have to take them and the old school would have to pay for them. There is the provision that council referenced with regard to 10.20.12a and 12.12b of the school code. Those are the residency procedures that apply across the board to all students, special education students and regular students. And when I started to talk about one of the requests to go through a two-step process, whenever a student approaches a school district for enrollment, the school district has to go through the analysis to determine if they are residents that are entitled to walk through the door to access services. That's governed by 10.20.12b of the school code. But that's just one step at a time. So I thought you just said a minute ago, though, that when I said that Dolan had to take these kids, you said, yeah, because they were living there, they had to take them. Correct. So if somebody sends their child to live there, finds a relative that lives there or a friendly person that takes the kid in, the school district has to take them, right? 10.20.12b specifically provides that if a parent sends a child to live with another, they use the term legal custodian in that section of the code, for reasons to access the educational programs of the district, they do not have to be enrolled. There's no suggestion in the case before the court that the reasons that the children were at Maryville was to access the Duran public schools in Dolan. So they had to accept those students. But, for example, if I have a child and I decide I want to send my child to live with my sister, who I think lives in a better school district so that my child can access those services, I'm not entitled to do that. If the sister is appointed a guardian of the child, that is proper. If my sister were appointed a guardian, it is a fact of consideration, but it is not controlling. If it is for purposes of accessing the educational programs of that other school district, the other school district has the right to deny enrollment. Counsel, a final question. Chicago board contends there's a body of case law that has found that the residence district is not obligated to pay for the educational component, which is a concern of Justice O'Malley, when a parent makes a unilateral decision to place his or her child in a residential treatment center for other than educational reasons. And I cite a couple of cases, Dale versus Bradley. Dale and Patricia P. Right. How do you respond to that argument? In my mind, Justice, it's a red herring. It's utterly irrelevant to the issues that are before you. Those cases, that whole line of cases are where a parent has said to a school district, you're not doing right by my child educationally. My child needs, and in Dale and in Patricia P., both of them were residential placement cases. My child needs a residential placement to meet their educational needs. So the school district was paying for the 24-7 program and the educational cost of the program. That's what was at issue in those cases. And that was a case where a school district was sued by a parent pursuant to the section, the IDEA and the sections of the school code that deal with that. It's 8.02A. There's a whole long process that is followed when a parent is unhappy with the educational services and ultimately sues the school district to recover their child. But that's not the case here. Why? That's not the case here because the students went to Maryville for reasons unrelated to their educational program. They went to Maryville because the parents sent them to Maryville for whatever reason. And so, and the parents weren't saying that they were unhappy with the educational services that CPS provided. They went, and they weren't suing CPS, which is what they would have had to do in order to access and fall under that whole body of law under Dale and Patricia P. These were students who went to live at Maryville and ultimately attended the Dolan Public Schools. And then because of the way the funding provisions are written in Article 14 and 1.11, 1.11B, the resident district is financially responsible for those. And so the dispute is between two school districts, not between a parent and the school district challenging the appropriateness of the services provided. Besides contesting the educational services bill, would the struggle board have a right of action against a parent for an improper placement, so to speak? Maybe this is beyond what you're addressing here today. But Chicago, you alluded to in those cases, they went back, the board went after the parents, right? No, the parents went after the board in the Patricia P. and Dale M. case. They said, we want you to pay for the 20, the residential program. But would the board have an action back against the parents? Not that I'm aware of, sir. Okay. All right, well, you answered my question quite a bit when you threw in that part about, and that's why I said I couldn't believe that they could do this wholesale. But it'd have to be, if they're moving for purposes of accessing that school system, then it's not, they can't do it. They shouldn't be allowed to enroll. And then if they were never allowed to enroll in Dolan, then they wouldn't have been in, Dolan wouldn't be in. Right. So then the question we've got is that the parents don't have unfettered discretion. They don't need anybody's expert approval or evaluation to place the children in a place like Maryville. I'm honestly, I don't know exactly. I know that not everybody can be placed at Maryville. I know that. I know that they have to have funding sources to support the placements that are in Maryville. Well, it wouldn't be, the question of funding wouldn't be the issue to me. I mean, whether or not they need those kind of things. Well, but on some level it does come down to funding. At some point in time somebody has to foot the bill for the residential component of the Maryville program for those children. If they qualified in the Cook County area, then Cook County would have to pay the bill. Was there any attempt to get the kids into a Cook County system for the disability aspect of their lives? For their educational component or for what Maryville is addressing? Disability. Disability. The same services that Dolan provides. Well, I don't believe so, only because of the jurisdictional, I mean, the geography at issue here. We're talking over 100 miles between where Durand is located and Chicago. Before the children got to Maryville, did the parents make any attempt to receive Cook County disability services through a public school system? Well, they were receiving disability special education services through CPS before they left. Whether they were seeking out other services outside of the educational services that CPS provided, meaning some other, what I'm going to call the unique rehabilitative opportunities that Maryville offered, I don't know. I can't answer that. I don't know if they looked more locally for something or if it was Maryville or nothing. I'm not certain what the process was. Did DCFS play any part in getting the kids from Cook County to Durand? Not to my knowledge, no sir. Thank you. Thank you. I just want to make two points. The first is District 153 and William C are not on point at all. In those two cases, the children were placed at DMH facilities, state facilities. And that's why those cases are not on point. In District 428, there were foster parents who had that kid, but he wasn't placed in a residential treatment facility. That's why that case is not like this one. Residential treatment is like the nuclear option for special education placements because it's really expensive, as we can see here. I just want to talk a little bit about damages. The judge said we didn't present any evidence to contest those two affidavits, but we presented the best evidence we had, which was William Damon's deposition. And in his deposition, it was clear he didn't know what these costs had to do with it. He couldn't explain why Dolan or Durand had three different per capita tuition costs, one for their high school and two for Dolan. He couldn't even explain that. Also, these children in each of their IEPs, it said they were supposed to receive therapeutic day school placements, and she admitted that just now, therapeutic day school placements. Then why were we billed for the residential treatment option, which is $37,000, rather than the therapeutic day treatment, which is $20,000? That's a disputed issue of fact. The third disputed issue of fact I want to talk about is those individual aides. We do dispute that these kids got individual aides. True, in their IEPs that Dolan prepared, they were supposed to get individual aides, but on their cost sheets, those aren't listed. So that's a disputed issue of material fact. Because of all those disputed issues of material fact, we're asking you to reverse the award of summary judgment and send it back to the trial court. All right, hold on a second here. Now, you just said that you're getting billed for the residential costs, and her position was, when she's up here, that you were not. Is it your position that you have been billed for the entire cost of both Mary Lou and Dolan? We were billed for the last school year, 07-08, we were billed $37,000. That is the residential treatment rate at Dolan. The rate for a therapeutic day school for the kids who came during the day and left was $20,000. Yes, I'm saying we were billed for the residential treatment, even though William Damon admitted that they weren't charging for room and board. He said Dolan's not charging for room and board. So that's a dispute, absolutely. Well, but is it your position then that you were billed $37,000, but the actual overall cost of both Mary Lou and Dolan exceeded even $37,000 then? Well, Mary Lou didn't bill us. Dolan did. But yeah, Mary Lou was paying for the residential, for room and board for these kids, and now the board is paying for room and board again at Dolan. Why didn't you get discovery and straighten this out in the trial court? We did. We took depositions. We did. Are you telling me that I still don't know whether you're saying that somehow the place is being paid twice? Because her position is that $37,000 is what the Chicago board owes. Over and above that, there's the room and board, and that's paid, and it's not a double recovery. And that would be something that would have been straightened out in discovery. Your argument, if I can paraphrase it, is the cost is solely based on what Dolan charges. Dolan charges apparently a larger cost under a residential type of placement rather than a transitory type of placement. And the kids from Maryville should be charged under a transitory price, which is, just as you indicate, approximately $10,000 difference, $30,000 versus $20,000. Is that correct? $37,000 versus $20,000. Yes, because the kids didn't live at Dolan, right? Right. If they had, then maybe we should have paid $37,000 if they lived at Dolan, but they didn't. They lived at Maryville, but we were charged as if they lived at Dolan. Well, nobody lived at Dolan, did they? Well, why do they have a residential treatment program then? If nobody lives there, why are they billing people $37,000? Why don't you ask him at his deposition? And he said he didn't know. He said that they were charged $37,000 because a higher intensity level of services were provided. But he couldn't explain what those were. Okay, you didn't ask what the impression that they were being charged because it was a residential thing. And he's giving an answer. He's not saying because we're giving them meals and a place to sleep. He says they need a higher level of intensity. And he says it's not room and board. What does residential treatment mean if not room and board? Well, those are questions you have to ask him at his deposition. We did ask him. No, Your Honor, we did ask him, and he couldn't explain why there were three per capita costs. All right, let me get to another point here. Now, this idea is, you know, this is a really complicated thing. Maybe it doesn't need to be. Your position now is that your client is only stuck with the bill if the residential out-of-district thing is part of their learning disability. Right. Okay, so even if a child has such a behavior problem that they line up experts and say the child needs to be in a residential facility for behavior problems, in addition and separate, the child has a learning disability, you would never be able to go from that no matter who made those statements about the child. No, if they would have come to the Chicago Public Schools and said my child has such a behavior problem, she can't be educated in the Chicago Public Schools, yes, then we would have had an issue. We would have had to decide if that was true. But that's not what happened here. Amanda had an emotional disturbance, but she was doing well in the Chicago Public Schools. That's what the – her parents agreed she was doing fine. They agreed with our IEP. Four months later, they decided to put her at Maryville, not because she needed it for her – But I'm still trying to get around who, in your view, would have the authority to say the child needs to live at Maryville. Let me finish. The child needs to live at Maryville. Consequently, the child will attend Dolan, and Chicago is going to be on the bill for the Dolan part of it. If they had shown that that's what she needed for her education – Showed to who? Showed to who? Right now, they showed it to their own parents. They made their decision. The parents made it. You know, Natalie, you're saying that's not enough. My question is, to whom do they show it? Well, it has to be the parents and the IEP team in the resident district. They have to decide. That's what the child needs. So Chicago, then, according to you, would have to make that decision. We're going to have to authorize this. If they want us to pay for an out-of-district placement, a residential treatment, yes, I believe that we are entitled to say, is that what the child needs? And if we say no and they say yes, go to a due process hearing. That's what the statute requires. Not that you just get to place your kid and have us foot the bill. Okay, so that's your problem, is that they didn't approach the school district and say – with their problem. They went out and took care of it themselves. If they approached you with the problem, you may have said yes, you may have said no. If you said no, then there's a hearing process. Exactly. Was that argument specifically made in the briefs? Yes, Your Honor. That's why I said they can't make a unilateral placement. That's why I cited those cases. They are in those cases. And obviously the argument was made to the trial court, and the trial court rejected that argument. Yes, Your Honor. Okay. Thank you. Thank you. Court is in recess.